UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN BALLOUT,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER TOWNSHIP OF CANTON et al.,<br><br>Defendants. | Case No. 25-13174<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS [38, 44, 53, 56] AND DENYING PLAINTIFF'S MOTION TO COMPEL AS MOOT [59]**

In January 2018, the Canton Police Department ticketed Plaintiff Benjamin Ballout for driving on an expired license. Ballout was not arrested during this incident. But due to an apparent error in the Department's records system, Ballout's criminal record reported that he was. Ballout did not discover this inaccuracy until 2024, when a prospective private employer rescinded Ballout's job offer after finding an "arrest" on his record during a background check.

While Ballout's record has since been righted, he believes the wrong has not. So he sues the Michigan State Police, Oakland County, Canton Township, Tyler Technologies, Inc. (the software vendor), and a few John Doe defendants, alleging this false report violated his Fourteenth Amendment due process rights and state law. (ECF No. 26.) Each defendant moves to dismiss for different reasons. For the reasons

that follow, the Court dismisses the federal claim for failure to state a claim and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.

On a motion to dismiss, the Court takes the facts alleged in the complaint as true, construes those allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).

On January 12, 2018, Benjamin Ballout was pulled over by the Canton Police and ticketed for driving with a license that was 20-days expired. (*See* ECF No. 26, PageID.132–133.) Ballout was not arrested, but due to a quirk in the computer records system used by the Canton Police Department, CLEMIS, this ordinary traffic stop was improperly coded as an "arrest" and so recorded on Ballout's criminal record. (*Id.*) And even though Ballout's license was just a few weeks expired at the time of the stop, the system also improperly recorded that it was over a year past due. (*Id.* at PageID.133.)

This error, unfortunately, did not come to light until October 2024, when a potential employer withdrew its job offer to Ballout after seeing an "arrest" listed on his criminal background check. (*See* ECF No. 26, PageID.137–139; *see also* Plaintiff's Exhibit A, ECF No. 26, PageID.156 (notarized background check letter dated October 7, 2024).) This was a surprise to Ballout, who in 2023 received a "notarized background clearance certification" from Canton Township, which confirmed that Ballout had no arrest record. (ECF No. 26, PageID.138.)

So "[b]eginning in early 2025," Ballout worked to clear his name, submitting multiple FOIA requests to Canton Township and the Michigan State Police to ensure his records were corrected. (*See* ECF No. 26, PageID.134–135, 136–137.) After some communication with the Canton Police Department, the Township ultimately issued a "No Arrest Record" and Correction Notice removing this arrest from Ballout's record. (Plaintiff's Exhibit O, ECF No. 26, PageID.205 (notarized background check letter dated September 9, 2025); Plaintiff's Exhibit B, ECF No. 26, PageID.160 (emails with Canton police department).) The Michigan State Police did the same. (Plaintiff's Exhibit M, ECF No. 26, PageID.199 (Michigan State Police letter dated October 15, 2025, certifying that Ballout has no criminal history).)

But Ballout was unsatisfied with the Township and the State's responses to his FOIA requests (*see* ECF No. 26, PageID.178), and, in any event, the damage was done. So he filed this lawsuit against Canton Township—the entity that employs the officers who "entered Plaintiff's record into the system;" Oakland County—the entity that "owns, hosts, and administers" the CLEMIS system; Tyler Technologies, Inc.—the software developer behind CLEMIS; the Michigan State Police—the entity that "disseminat[es] . . . criminal justice records statewide"; and three John Doe individuals who inaccurately inputted the "arrest" into the CLEMIS system. (*Id.* at PageID.131–132.) Ballout asserts violations of his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983, as well as two state-law tort claims: negligent misrepresentation of criminal justice information and defamation *per se*.

(*Id.* at PageID.139–140.) He seeks compensatory and punitive damages as well as injunctive relief by way of "record correction." (*Id.* at PageID.140.)

Canton Township, Oakland County, the Michigan State Police (MSP), and Tyler Technologies moved separately to dismiss Ballout's amended complaint on varying grounds. (ECF Nos. 38 (MSP Motion), 44 (Canton Motion), 53 (Oakland County Motion), 56 (Tyler Technologies' Motion).)

**II.**

The Court starts with the most straightforward of the motions: the Michigan State Police motion to dismiss based on sovereign immunity. (ECF No. 38.)

Under the Eleventh Amendment, states and their departments are immune from suit in federal court. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). "The Michigan State Police is an agency of the state of Michigan," and is therefore a 'department' covered by state sovereign immunity. *Perez v. Mich. State Police Dep't*, No. 19-666, 2019 U.S. Dist. LEXIS 149946, at *4 (W.D. Mich. Sept. 4, 2019) (collecting cases).

There are three exceptions to that immunity: 1) when the state expressly consents to suit and waives its immunity, *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); 2) when Congress has abrogated state sovereign immunity, *see, e.g.*, *Fitzpatrick v. Bitker*, 427 U.S. 445, 451–52 (1976); and 3) when the suit seeks prosecutive injunctive and declaratory relief compelling a state official to comply with federal law, *see Ex parte Young*, 209 U.S. 123 (1908).

None apply here. It is well established that the State of Michigan has not consented to civil rights suits in federal court, *see Johnson v. Unknown Dellatifa*, 357

F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir. 1986)), and that Congress has not abrogated sovereign immunity for § 1983 suits, *Quern v. Jordan*, 440 U.S. 332, 341–42 (1979). Nor does Ballout seek any forward-looking prospective injunctive relief that would bring his claim within the ambit of *Ex parte Young*. *See, e.g.*, *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 508 (6th Cir. 2008) ("The *Ex parte Young* exception does not, however, extend to any retroactive relief") (citing *Quern*, 440 U.S. at 338)).

Accordingly, the Michigan State Police is immune from suit and must be dismissed from the case.

## III.

All three of the remaining defendants—Tyler Technologies, Canton Township, and Oakland County—argue that Ballout, for various reasons, fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[1]

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state[] a claim for relief that is plausible, when measured against the elements" of his claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)); *see also Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) ("the complaint [must] 'contain sufficient factual matter, accepted as true, to state a

[1] Tyler Technologies also argues that Ballout failed to satisfy Federal Rules of Civil Procedure 8 and 9, which outline the basic contents a proper pleading must contain. These arguments are well-taken. But the Court is obligated to interpret *pro se* complaints liberally. Because it need not reach these issues, the Court will not address them further.

claim to relief that is plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A *pro se* litigant's complaint is to be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But every complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" to survive 12(b)(6) dismissal. *See Ashcroft*, 556 U.S. at 678.

Ordinarily, this plausibility analysis looks only at the complaint itself. *See, e.g.*, *Bowling v. Ky. Dep't of Cmty. Based Servs.*, No. 24-140, 2025 U.S. Dist. LEXIS 191100, at *5 (E.D. Ky. Sept. 25, 2025). But the Court may also consider exhibits or "other materials that are integral to the complaint," or "public records." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011). Ballout's first amended complaint is accompanied by various exhibits that contain both pictures and additional arguments. (ECF No. 26, PageID.144–212.) The Court liberally construes these documents as essential to Ballout's claims and reads them as part of the complaint itself.

**A.**

A claim under 42 U.S.C. § 1983 has two elements: (i) a violation of plaintiff's constitutional rights (ii) committed by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

As to the first element, Ballout contends that Defendants violated his constitutional rights under the Fourteenth Amendment's due process clause when they published inaccurate information about his arrest record, harming his "reputation and professional standing," without "any meaningful opportunity to

identify, challenge, or correct the false arrest designation." (ECF No. 26, PageID.133, 137, 139.)

A procedural due process claim has two elements: (i) deprivation, by state action, of a protected interest in life, liberty, or property, interest; and (ii) inadequate state process. *Tolley v. Town of Lynnville*, 25-000010, 2026 U.S. Dist. LEXIS 64522, at *10 (M.D. Tenn. Mar. 26, 2026) (quoting *Reed v. Goertz*, 598 U.S. 230, 236 (2023)); *Esordi v. Macomb Twp.*, No. 23-1365, 2024 U.S. App. LEXIS 18976, at *5 (6th Cir. July 29, 2024) ("We generally engage in a two-step process in analyzing a procedural-due-process claim. First, we determine if the plaintiff has a protected [liberty] interest and, second, we consider 'what procedures are required to protect that interest.'") (citation omitted). The Court's analysis begins and ends with the former.

**1.**

Ballout claims injury to his reputation and public standing, which he says constitutes deprivation of his protected liberty interests. (*See, e.g.*, ECF No. 26, PageID.133, 137.) True, one may have a protected liberty interest in his "'reputation, good name, honor, and integrity.'" *Schiavoni v. Marn*, 24-2090, 2026 U.S. Dist. LEXIS 123365, at *14 (N.D. Ohio June 4, 2026) (quoting *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 555 (6th Cir. 2017)). But "people do not have a liberty interest in their 'reputation' *alone*—even though state defamation law has long sought to preserve that reputation from injurious false claims." *Pichiorri v. Burghes*, 162 F.4th 745, 753 (6th Cir. 2025) (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)); *see also Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 786 (6th Cir. 2016) ("'[T]here

is no viable, free standing, federal due process claim arising from injury to one's reputation.'" (quoting *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 586 (6th Cir. 2004).); *see also Paul v. Davis*, 424 U.S. 693, 702 (1976) (explaining that not "every defamation by a public official" can be "convert[ed] . . . into a deprivation of liberty within the meaning of the Due Process Clause").

Rather, the Supreme Court has developed a "stigma-plus" test for analyzing procedural due-process violations based on defamatory statements made by a state actor. *Paul*, 424 U.S. at 711. Under that test, the plaintiff must "show that the state's action both damaged his or her reputation (the stigma) and that it deprived [him or her] of a right previously held under state law (the plus).'" *Doe v. Michigan Dep't of State Police*, 490 F.3d491, 501 (6th Cir. 2007) (alternations original). "In other words, 'the alleged damage must be tied to some alteration of a right or status previously recognized by state law.'" *Lynem v. Worthy*, No. 21-10534, U.S. Dist. LEXIS 61221, at *19 (E.D. Mich. Mar. 31, 2022) (quoting *Crosby*, 863 F.3d at 555).

Ballout adequately alleges "the stigma"—that the government's CLEMIS system falsely classified him as having been arrested. So the viability of the claim turns on whether he has adequately alleged "the plus." Giving the complaint its most plausible interpretation, Ballout alleges that he lost an employment offer "with a United Arab Emirates commodities and capital markets firm, in a role involving structured trade execution and pre-IPO advisory operations." (ECF No. 26, PageID.138.)

True, there are a line of cases recognizing that loss of nontenured, public employment may be a tangible injury sufficient to satisfy the "plus" requirement. *See, e.g.*, *Chilingrian v. Boris*, 882 F.2d 200, 203–04 (6th Cir. 1989); *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 409–10 (6th Cir. 1997); *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584–85 (6th Cir. 2021). But the Court is not aware of any cases extending this rule to the loss of *private* employment; nor has Ballout identified any. (*See* ECF No. 26, PageID.137.)

In fact, Sixth Circuit law suggests "the plus" is not extended this far:

> Courts recognizing a constitutionally protected right to employment have done so in very limited circumstances and have dealt with terminations of government employment where either state law or an agreement between the parties purports to limit the ability of the government to terminate the employment. [Plaintiff] has not cited, and we have not found, any case recognizing a general right to private employment.

*Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999); *see also Paul*, 424 U.S. at 706 (observing that "the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of *government* employment" (emphasis added)).

And more recent cases further support that the stigma-plus doctrine does not reach private employment. *See Martin v. Shelby Cnty.*, No. 24-5044, 2024 U.S. App. LEXIS 16367, at *3–4 (6th Cir. July 2, 2024) ("in some *narrow* contexts, the Due Process Clause prevents *a state* from firing an employee and criticizing her in the process. This peculiar (and infrequently utilized) 'right' has been dubbed a 'stigma-

plus' claim, and the remedy is a 'name clearing hearing.'") (emphasis added) (citation omitted); *see also Jackson v. Heh*, No. 98-4420, 2000 U.S. App. LEXIS 14075, at *21 (6th Cir. June 2, 2000) (dismissing plaintiff's claim that defendant's defamatory statements deprived him of his liberty and property interests in continued employment because "Jackson has only alleged loss of a particular private job, and relative lack of success in the competitive private job market."). This is consistent with the position of other circuits as well. *See, e.g.*, *Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) (finding no deprivation of a protected liberty interest where the plaintiff worked for a non-governmental employer and lost a private, rather than public, position)"); *Ianuale v. New Jersey*, No. 18-03069, 2025 U.S. Dist. LEXIS 144812, at *23 (D.N.J. July 29, 2025) (explaining that, under Third Circuit law, loss of non-government employment is not a qualifying "plus" for a stigma-plus claim).

Accordingly, Ballout has failed to allege a cognizable "plus" based on the withdrawal of the private job offer and the injury to his reputation from the false classification of his arrest (the "stigma") is not sufficient to state a due process violation claim.

**2.**

Even if Ballout alleged the deprivation of a right secured by state law, he has failed to allege that he requested a name-clearing hearing, which is "fatal" to his claim. *See Kaplan*, 10 F.4that 584–85; *see also Medlin v. City of Algood,* 814 F. App'x 7, 17 (6th Cir. 2020) ("[T]his Court has consistently held that a plaintiff's failure to

request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process.") (alteration original).

For these reasons, Ballout has failed to state a viable due process claim under the Fourteenth Amendment and his § 1983 claim must be dismissed. Thus, the Court need not consider Defendants' argument that the claim is also untimely.

**IV.**

Ballout also seeks to hold Canton Township and Oakland County liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (ECF No. 26, PageID.140.) But the foregoing analysis precludes that claim, as there can be no *Monell* liability where there is no constitutional violation. *See, e.g.*, *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 844 (6th Cir. 2025). So Ballout's claims under a *Monell* theory of liability also fail.

**V.**

That leaves Ballout's defamation and negligent misrepresentation claims under state law. (*See* ECF No. 26, PageID.140.)

By statute, federal courts may exercise supplemental jurisdiction over certain state-law claims. *See* 28 U.S.C. § 1367(a). However, courts have the discretion to decline to exercise such jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "As a rule of thumb, . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citing

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

Because Ballout's amended complaint contains no viable federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. So these counts are dismissed without prejudice.

**VI.**

In sum, Michigan State Police are immune from suit and dismissed from the case; Ballout's § 1983 claim is dismissed for failure to state a claim; and the Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are thus also dismissed. Accordingly, Ballout's complaint is dismissed in full. Thus, Ballout's motion to compel (ECF No. 59) is denied as MOOT.

IT IS SO ORDERED.

Dated: August 4, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE